Robinson, J.
The question presented in this case is whether a disease contracted in the course of employment is an “injury” within the meaning of Section 1465-68, General Code.
Section 1465-68 provides: “Every employe mentioned in subdivision one of section fourteen hereof, who is injured, and the dependents of such as are killed in the course of employment, wheresoever such injury has occurred, provided the same was not purposely self-inflicted * * * shall be paid such compensation out of the state insurance fund for loss sustained on account of such injury or death as is provided in the case of other injured or killed employes * * *.” '
*563 Thus far this court has not been called upon to determine whether the term “injury” was intended by the legislature to include diseases generally, although in the case of Industrial Commission v. Brown, 92 Ohio St., 309, it did declare that the original voluntary workmen’s compensation act, passed prior to the adoption of the present constitution, did not contemplate compensation for occupational disease. The first proposition of the syllabus in that oase contained the following language: “An injury or death resulting from disease contracted in the course of such employment, known as an occupational disease, is not such as contemplated by the provisions of the act referred to, and cannot be made the basis of a claim for compensation from the insurance fund so provided.” And this decision was based largely upon what it conceived to have been the construction put upon the language of that act by the general assembly in the enactment of our present workmen’s compensation law.
The decision in that case is helpful in that it construes substantially the same language we have here under consideration. Section 21 of the original act (102 O. L., 529) provided “The state liability board of awards shall disburse the state insurance fund to such employes of employers as have paid into said fund the premiums applicable to the classes to which they belong, that have been injured in the course of their employment, wheresoever such injury has occurred, and which have not been purposely self inflicted, or to their dependents in case death has ensued. ’ ’
Since the enactment of that section, and prior to the enactment of the present workmen’s compensation law, the constitution has been amended. Sec *564 tion 35, Article II of the Constitution, in so far as applicable to the question here involved, reads: “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed,” etc. But it cannot be contended that the subsequent adoption of this provision of the constitution could in any way be helpful in the interpretation of the meaning of legislation enacted prior thereto. It must now be assumed with reference to the present law that the legislature acted in pursuance of the authority conferred by Section 35, Article II, and that where it used the same words used in the constitution it used them in the same sense that the constitution-makers used them. The constitution-makers apparently did differentiate between injuries and occupational diseases, and used the words “death” and “injuries” occasioned in the course of employment, as distinguished from death or injuries from diseases occasioned in the course of employment; for it can not be claimed that death from an occupational disease is any less an injury than death from any other disease, or that a sickness from an occupational disease is any less an injury than a sickness from any other disease, and it necessarily follows that in the opinion of the members of the constitutional convention the term “injury” did not comprehend disease, else why the addition of the words “or occupational disease.” If injury included disease generally, then it of course included occupational disease; if it did not include occupational disease, then it did not include disease generally, and disease generally was excluded from its contemplation by the specific inclusion of occupational disease; end if this court, prior to the adoption of the Consti *565 tution of 1912, without the aid of the inference which follows a comparison of the language of the present workmen’s compensation law with the language of the constitution authorizing the legislation, arrived at the conclusion that the words “employes * * * that have been injured in the course of their employment” did not contemplate an injury or death from an occupational disease contracted in the course of employment, we are unable to comprehend how this court, in the light of the differentiation which the constitution makes between injury and occupational disease, can arrive at the conclusion that without specifically including or excluding either it was the intention of the legislature in following the language of the constitution to include under the term “injury” disease generally and at the same time exclude one form of disease.
That a disease is an injury must be conceded, but by the same token it must also be conceded that an occupational disease is an injury. The constitution-makers however did not regard occupational disease as included in the term “injury,” and so added it by specific designation. If, then, occupational diseases, which, experience has demonstrated, follow certain occupations with certainty to a considerable proportion of the persons so occupied, are excluded from the meaning of the term “injury,” by what process of reasoning can we say that they intended to include diseases which occasionally occur without intending to include diseases which regularly occur?
It is true that in most jurisdictions occupational diseases are not considered compensable under, the workmen’s compensation laws, upon the theory that such diseases lack the element of accident, and this court in the case of the Industrial Commission v. *566 Roth, 98 Ohio St., 34, overruled a demurrer to a petition seeking compensation for “lead poisoning” contracted in an accidental manner, but this court in that case gave consideration to the question of accidental occupational diseases as distinguished from occupational diseases generally, and seemed to assume that accidental occupational diseases were compensable, and upon that proposition, as. well as upon the compensability of non-occupational diseases, authority may be found both pro and con, and we do not attempt to say with which proposition is the greater weight of authority. But in view of the constitutional interpretation, in view of the fact that during the eight years that the compulsory compensation law has been in force, the industrial commission has given the term “injury” an interpretation which excludes diseases which are contracted, as distinguished from diseases which are occasioned by or follow as a result of some physical injury, and in view of the fact that to interpret the term “injury” as including diseases generally would enlarge the scope of disabilities compensable to such an extent as to either bankrupt the fund or require a complete readjustment of premiums upward, we hold that if the scope of cases compensable is to be extended it should be done by unambiguous legislative enactment rather than by judicial construction. For it must be recognized that if the term “injury” is to be construed to include typhoid fever contracted in the course of employment, it may as well include influenza, pneumonia, tuberculosis, smallpox, ordinal colds, rheumatism, and practically every disease which may be contracted by workmen in the *567 course of employment, and the workmen’s compensation department will become a health and life insurance department for workmen, compulsorily supported by employers, and the constitutionality of the whole scheme be endangered.
The judgment of the court of appeals and of the court of common pleas will be reversed, and the demurrer to the petition will be sustained.

Judgment reversed.

Hough, Jones and Matthias, JJ., concur.